**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 11-2096 (RC) |
| | : | | |
| v. | : | Re Document No.: | 25 |
| | : | | |
| LATNEY'S FUNERAL HOME, INC., *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### GRANTING PLAINTIFF'S MOTION FOR CIVIL CONTEMPT AND SANCTIONS

## I.  INTRODUCTION

The United States (the "Government") alleges that Latney's Funeral Home, Inc.

("LFHI") attempted to avoid its federal tax obligations for the better part of a decade by

repeatedly failing to file tax returns and pay taxes owed to the Internal Revenue Service ("IRS").

On February 17, 2012, the Court granted by consent a Preliminary Injunctive Order (the

"Injunction") against LFHI that, among other things, precluded LFHI from committing further

violations of the Internal Revenue Code.  Order, ECF No. 18.  The Court also granted the

Government's unopposed Motion for Partial Summary Judgment, finding that LFHI owes over

$1 million in unpaid payroll taxes and civil penalties.  Mem. Op., Apr. 10, 2013, ECF No. 23.

After LFHI remained delinquent on its past and present federal tax obligations, the Government

filed a Motion for Civil Contempt and Sanctions and a Show Cause Order against LFHI and its

co-operators, Carol E. Latney-Solomon ("Latney-Solomon") and John W. Latney ("Latney")

(collectively, "Defendants").  Pl.'s Mot. for Civ. Contempt, June 21, 2013, ECF No. 25.  On

October 29, 2013, this Court ordered that Defendants show cause for why they should not be held in civil contempt of the Injunction.  Order, ECF No. 34.

Upon consideration of the Government's motion and Defendants' opposition to that motion, as well as additional relevant filings in this matter, the Court concludes for the reasons discussed below that Defendants are in civil contempt of the Injunction.  Further, to remedy Defendants' continued noncompliance with the internal revenue laws and the Injunction, the Court orders that a limited receiver be appointed to assume control of LFHI's assets and ensure that Defendants' past, present, and future federal tax obligations are met.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

LFHI is a family-run funeral home in the District of Columbia operated by siblings Latney-Solomon and Latney.  Compl., Nov. 23, 2011, ECF No. 1, ¶¶2-3, 10.  LFHI was founded in 1938, and Latney-Solomon and Latney inherited the company from their parents.  Defs.' Mem. in Opp'n, Mar. 31, 2014, ECF No. 44, at 1.  In its Complaint, the Government alleges that since at least 1999, LFHI has committed numerous violations of the Internal Revenue Code.  These violations include: LFHI's failure to timely file its Employer's Quarterly Tax Returns (Form 941) for all taxable quarters since the third quarter of 1999, Compl., ECF No. 1, ¶14; LFHI's failure to pay federal income and social security taxes that were withheld from LFHI employees for nearly every quarterly tax period since 1999, totaling $1,009,871, *id.* ¶¶15-18; LFHI's failure to timely file Federal Unemployment Tax Act (Form 940) returns since 1999, *id.* ¶20; and LFHI's failure to pay the full amount of federal unemployment taxes between December 1999 and December 2008, totaling $60,322, *id.* ¶¶21-24.  In addition to these violations, LFHI owes $28,062 in civil penalties under 26 U.S.C. § 6721 for its intentional failure to file W-2 Wage and Tax statements in 2002.  *Id.* ¶¶26–29.

Before filing the Complaint, the Government took several steps to move Defendants into compliance with the federal tax laws and to prevent Defendants from further compounding their tax liabilities. Pl.'s Mot. for Prelim. Inj., Nov. 23, 2011, ECF No. 2, at 5-6. For example, on May 21, 2008, the Government sent Defendants an "IRS Letter 903" imploring them to comply with the payment and deposit rules for federal employment taxes and advising them of possible civil and criminal penalties for continued noncompliance. Decl. of Lisa A. Swope, ECF No. 1-1, at ¶¶20-21. Despite issuance of this warning, LFHI continued to incur additional employment tax liabilities on top of the taxes it already owed for prior periods. Order, ECF No. 18, at ¶8. The IRS also attempted conventional collection methods against LFHI to no avail. Pl.'s Mot. for Prelim. Inj., ECF No. 2, at 6. These actions included filing Notices of Federal Tax Lien against LFHI and issuing IRS levies to sixteen potential sources of collection regarding LFHI's outstanding taxes. Decl. of Lisa A. Swope, ECF No. 1-1, at ¶¶23-24.

In addition to filing the Complaint against Defendants, the Government simultaneously moved for a preliminary injunction.[1] Pl.'s Mot. for Prelim. Inj., ECF No. 2. On February 17, 2012, the Court granted the Government's motion with Defendants' consent and issued the Injunction. Order, ECF No. 18. The Government separately moved for partial summary judgment on October 5, 2012. Pl.'s Mot. for Part. Summ. J., ECF No. 21. On April 10, 2013, the Court granted this motion, which Defendants did not oppose, finding that LFHI owes $1,009,871 in federal income and social security taxes, $60,322 in federal unemployment taxes, and $28,062 in civil penalties. Mem. Op., ECF No. 23, at 4.

---

[1] The Government later also moved for a permanent injunction against Defendants. Pl.'s Mot. for Perm. Inj., July 25, 2013, ECF No. 31. The Court does not decide at this time whether a permanent injunction is appropriate.

That brings us to the impetus for today's ruling. On June 21, 2013, the Government filed a Motion for Civil Contempt and Sanctions and a Show Cause Order. Pl.'s Mot. for Civ. Contempt, ECF No. 25. In their opposition memorandum, Defendants argued that a show cause order is appropriate for only "willful violation[s]" of a court order, whereas in this instance Defendants were in "good faith compliance" with the Injunction.[2] Defs.' Mem. in Opp'n, July 17, 2013, ECF No. 28, at 2. To demonstrate their "good faith" effort to file and pay taxes, Defendants attached records demonstrating partial payment of taxes for periods in 2012 and 2013. *See* Defs.' Mem. in Opp'n, ECF No. 28-1. In response, the Government argued that LFHI had not filed all its outstanding tax returns and had "continued to pyramid its tax liabilities by not fully paying its payroll tax obligations since the entry of the preliminary injunction." Pl.'s Reply, July 26, 2013, ECF No. 32, at 2. For example, the Government pointed out that the exhibit to Defendants' opposition memorandum showed that although Defendants had paid $12,821.82 toward its 2013 taxes as of May 21, 2013, "[t]hey still ow[ed] $9,419.80 to make them current for the year." *Id.* (citing Defs.' Mem. in Opp'n, ECF No. 28-1).

The Court granted the Government's motion and issued a Show Cause Order on October 29, 2013, which stated that Defendants were in violation of nearly all the requirements in the Injunction.[3] Order, ECF No. 34. A hearing was held regarding the Show Cause Order on

---

[2] On July 18, 2013, Defendants filed a separate but similar memorandum in opposition to the Government's motion for civil contempt. Defs.' Mem. in Opp'n, ECF No. 29. The Court ruled that this document was untimely filed because Defendants failed to seek the necessary leave before filing. Order, July 19, 2013, ECF No. 30.

[3] In particular, the Show Cause Order noted that Defendants failed to comply with the Injunction's demands: "to withhold and to pay over to the Internal Revenue Service all employment taxes, including federal income, FICA, and FUTA taxes, as required by law"; "to timely make the federal tax deposits from the date of the Order"; "to timely file all federal employment (Form 941) and unemployment (Form 940) tax returns and to pay any balance due on those returns upon filing"; "to file with the Internal Revenue Service and the United States Social Security Administration, and issue to any employee, accurate IRS Form W-2"; "not to pay

January 22, 2014, and the parties submitted supplemental briefing on whether Defendants are in contempt and, if so, what sanctions are appropriate.

## III. ANALYSIS

### A. Legal Standard For Civil Contempt

"[C]ourts have the inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966). The civil contempt power "is essential to the enforcement of the judgments, orders, and writs of the courts, and consequently to the due administration of justice." *Broderick v. Donaldson*, 437 F.3d 1226, 1234 (D.C. Cir. 2006) (citation and quotation omitted). "A civil contempt action is characterized as remedial in nature, used to obtain compliance with a court order or to compensate for damages sustained as a result from noncompliance." *United States v. Shelton*, 539 F. Supp. 2d 259, 262 (D.D.C. 2008) (citing *Evans v. Williams*, 206 F.3d 1292, 1294-95 (D.C. Cir. 2000)).

As the party moving for a civil contempt finding, the Government bears the initial burden of demonstrating by clear and convincing evidence that: (1) there was a clear and unambiguous court order in place; (2) that order required certain conduct by Defendants; and (3) Defendants failed to comply with that order. *See Int'l Painters & Allied Trades Indus. Pension Fund v. ZAK Architectural Metal & Glass LLC*, 736 F. Supp. 2d 35, 38 (D.D.C. 2010) (citing *Armstrong v. Exec. Office of the President*, 1 F.3d 1274, 1289 (D.C. Cir. 1993); *SEC v. Bilzerian*, 112 F. Supp. 2d 12, 16 (D.D.C. 2000)). "'In the context of civil contempt, the clear and convincing standard

---

other creditors and transferring, disbursing or assigning money, property or assets until the required federal tax deposits are fully made for the given tax period from the date of the Order"; "not to pay other creditors unless LFHI is current on its federal employment tax obligations"; "to file all unfiled and past-due federal tax returns with the Internal Revenue Service"; and "to provide the proof to IRS Revenue Officer Lisa Swope of LFHI's federal tax deposit payments." Order, ECF No. 34.

requires a quantum of proof adequate to demonstrate a reasonable certainty that a violation occurred.'" *Phillips v. Mabus*, 894 F. Supp. 2d 71, 91 (D.D.C. 2012) (quoting *Breen v. Tucker*, 821 F. Supp. 2d 375, 383 (D.D.C. 2011)).

"Once the court determines that the movant has made the above three-part showing, the burden shifts to the defendant to justify the noncompliance by, for example, demonstrating its financial inability to pay the judgment or its good faith attempts to comply." *Int'l Painters & Allied Trades Indus. Pension Fund*, 736 F. Supp. 2d at 38 (citing *Bilzerian*, 112 F. Supp. 2d at 16-17). The alleged contemnor must justify its noncompliance "categorically and in detail." *Id.* at 40 (citation omitted); *SEC v. Current Fin. Servs., Inc.*, 798 F. Supp. 802, 808 (D.D.C. 1992) (citation omitted). A court "need not find that [the] failure to comply with the orders was willful or intentional" because a party's intent is irrelevant when making a civil contempt determination. *Bilzerian*, 112 F. Supp. 2d at 16 (citation omitted).

### B. Whether Defendants Are In Civil Contempt Of The Injunction

On June 21, 2013, the Government asked this Court to issue a show cause order requiring Defendants to demonstrate why they are not in violation of the Injunction. Pl.'s Mot. for Civ. Contempt, ECF No. 25. The Court granted the Government's motion and ordered that Defendants show cause for why they should not be held in civil contempt. Order, ECF No. 34. As the movant, the Government bears the initial burden of demonstrating by clear and convincing evidence that: (1) there was a clear and unambiguous court order in place; (2) that order required certain conduct by Defendants; and (3) Defendants failed to comply with that order. *Int'l Painters & Allied Trades Indus. Pension Fund*, 736 F. Supp. 2d at 38. Upon consideration of the parties' arguments and for the reasons discussed below, the Court concludes

that the Government has met its burden of demonstrating by clear and convincing evidence that Defendants are in civil contempt of the Injunction.

### 1. Clear And Unambiguous Court Order Requiring Certain Conduct

The Government first must demonstrate that there was a clear and unambiguous court order in place and that this order required certain conduct by Defendants. *Id*. The Injunction— the entry to which Defendants consented—required Defendants to, among other things:

- "immediately cease violating Internal Revenue Code Sections 3102, 3111, 3301, 3402, 6011(a) and 6041";

- "withhold and to pay over to the Internal Revenue Service all employment taxes, including federal income, FICA, and FUTA taxes, as required by law";

- "make timely (no later than the 15th day of the following month) deposits of federal payroll taxes, *e.g*., withheld federal income tax, withheld FICA tax as well as defendant's share of FICA tax, as they become due in an appropriate federal depository bank in accordance with the federal deposit regulations";

- "timely file with the Internal Revenue Service all federal employment (Form 941) and unemployment (Form 940) tax returns and to pay any balance due on those returns upon filing";

- "file with the Internal Revenue Service and the United States Social Security Administration, and issue to any employee, accurate IRS Form W-2s"; and

- "file all unfiled and past-due federal tax returns with the Internal Revenue Service within 60 days of the entry of this preliminary injunction."

Order, ECF No. 18. Further, the Court's order enjoined LFHI "from transferring, disbursing, or assigning any money, property, or assets until the required federal tax deposits have been fully

made for the given payroll period," and demanded that "LFHI shall not pay other creditors before paying their current federal, employment and other tax liabilities." *Id.*

It is clear and uncontested that the Injunction constitutes an unambiguous court order that required certain specified conduct by Defendants. *See Phillips*, 894 F. Supp. 2d at 91 ("An order granting injunctive relief is enforceable by the district court's power of contempt.") (citing *Gunn v. Univ. Comm. to End War in Viet Nam*, 399 U.S. 383, 389 (1970)). As such, the Court finds that the Government has satisfied the first two requirements of the civil contempt standard.

### 2. Failure To Comply With The Court Order

The Government next must establish the third and final element of the civil contempt standard: that Defendants failed to comply with the Injunction. *See Int'l Painters & Allied Trades Indus. Pension Fund*, 736 F. Supp. 2d at 38. The Government argues that despite the Show Cause Order and other non-judicial efforts to force Defendants into compliance, Defendants continue to violate multiple provisions in the Injunction. In particular, the Government asserts that LFHI has failed to file Form 941 federal employment tax returns for several quarters between 2009 and 2012, including: June of 2009; September of 2009; December of 2009; March of 2010; June of 2010; September of 2010; March of 2011; June of 2011; September of 2011; and December of 2012. Pl.'s Suppl. Mem., Feb. 12, 2014, ECF No. 41, at 3. The Government also contends that LFHI has failed to file Form 940 federal unemployment tax returns for the years 2009 and 2010. *Id.* In addition, the Government alleges that LFHI has failed to pay the balance due on the returns it has filed, and the tax deposits it has made are insufficient to pay fully its employment tax liabilities for the periods ending June 30, 2009, through December 31, 2013. *Id.*

In response, Defendants address a few of the Government's arguments but ignore many others. They claim that their employment taxes are current for all of 2013 and the first quarter of 2014 but make no representations about having fully or timely paid their delinquent taxes before 2013. Defs.' Mem. in Opp'n, Mar. 31, 2014, ECF No. 44, at 4-26. Notably, in one filing Defendants revealed that as of December 1, 2012, they owed $23,314.03 in outstanding taxes for the year 2012, but they since have made no representations about if or when they paid that delinquency. Defs.' Mem. in Opp'n, ECF No. 28-1, at 7.

The Government, however, offers evidence that not only did Defendants fail to pay their outstanding 2012 taxes, they also failed to pay fully their 2013 taxes. Pl.'s Reply, May 5, 2014, ECF No. 47, at 1. Indeed, the Government asserts that LFHI "owes taxes for every quarter since February of 2012," which is when the Injunction was issued. *Id.* The Government's exhibits demonstrate that LFHI still owes the following taxes to the IRS: $1,418.56 for the period ending March 31, 2012; $13,945.96 for the period ending June 30, 2012; $11,695.08 for the period ending September 30, 2012; $2,976.38 for the period ending March 31, 2013; $8,488.49 for the period ending June 30, 2013; $12,294.83 for the period ending September 30, 2013; and $73.06 for the period ending December 31, 2013 (with a tax return filed on or about March 24, 2014). Decl. of Beatriz T. Saiz, ECF No. 47-1, at ¶¶4-6, 8-11. Furthermore, the Government asserts that Defendants did not file their Form 941 for the fourth quarter of 2012, despite the Injunction being issued in February 2012, which means they have paid no taxes for that period. *Id.* ¶7.

Defendants have not provided evidence of progress toward filing their other missing federal tax returns, including the Form 941 federal employment tax returns for periods before 2012 and the Form 940 federal unemployment tax returns for 2009 and 2010. Defendants, moreover, have an outstanding court judgment against them for over $1 million in unpaid federal

taxes and civil penalties as of August 1, 2011, plus interest and statutory additions. Order, Apr. 10, 2013, ECF No. 22. It is unclear if or how Defendants plan to address this balance and bring themselves into compliance with the internal revenue laws and the Injunction. Based on their own admissions, Defendants are struggling to pay their current employment tax obligations, let alone begin making a dent in their $1 million-plus judgment or fulfilling their other obligations to the IRS. Defs.' Mem. in Opp'n, ECF No. 28, at 1. In the meantime, Defendants continue to incur additional tax liabilities every day they are in business.

Finally, the Government asserts that Defendants remain in violation of several other requirements in the Injunction, including the demands on Defendants: to file with the IRS and the United States Social Security Administration, and issue to any employee, accurate IRS Form W-2; not to pay other creditors and transferring, disbursing or assigning money, property or assets until the required federal tax deposits are fully made for the given tax period from the date of the [Injunction]; and not to pay other creditors unless LFHI is current on its federal employment tax obligations. Pl.'s Mot. for Civ. Contempt, ECF No. 25-1, at 6. Defendants do not address, or deny, these allegations. Indeed, Defendants appear to concede a violation of the latter two demands when they assert that since the Injunction, LFHI's money was spent on overhead and staff salaries before fully paying outstanding taxes. Defs.' Mem. in Opp'n, ECF No. 44, at 2. Accordingly, the Court finds that the Government has met its burden of demonstrating that Defendants are not in compliance with the Injunction.

*　　*　　*

For the reasons discussed above, the Court concludes that the Government has met its burden of establishing Defendants' civil contempt of the Injunction.

10

## C. Whether Defendants Have Justified Their Noncompliance

Defendants now bear the burden of justifying their civil contempt and noncompliance with the Injunction. *See SEC v. Bilzerian*, 112 F. Supp. 2d 12, 16 (D.D.C. 2000) ("Once the [movant] has made a prima facie showing that [the contemnor] did not comply with the Court's orders, the burden shifts to [the contemnor] to produce evidence justifying his noncompliance."). Demonstrating the "inability to comply or good faith substantial compliance" can justify noncompliance with a court order and enable a party to avoid a civil contempt finding. *Int'l Painters & Allied Trades Indus. Pension Fund v. ZAK Architectural Metal & Glass LLC*, 736 F. Supp. 2d 35, 40 (D.D.C. 2010) (citing *Food Lion, Inc. v. United Food & Commercial Workers Int'l Union*, 103 F.3d 1007, 1017 (D.C. Cir. 1997)). At this stage, conclusory statements about the financial inability to comply or good faith substantial compliance are insufficient; instead, Defendants must demonstrate any offered justification "categorically and in detail." *Id.* (citation omitted); *SEC v. Current Fin. Servs., Inc.*, 798 F. Supp. 802, 808 (D.D.C. 1992) (citation omitted).

Defendants appear to raise two justifications in their opposition documents: that they are financially unable to comply and that they have attempted to comply in good faith. Upon consideration of the parties' arguments and for the reasons discussed below, the Court finds that Defendants' claims are unpersuasive and concludes that Defendants have not adequately justified their noncompliance with the Injunction.

### 1. Financial Inability To Comply

Defendants assert that they are financially unable to comply with the Injunction and repay their substantial tax liability. Defs.' Mem. in Opp'n, ECF No. 44, at 2. Defendants bear the burden of establishing this justification, and they must demonstrate it "categorically and in

detail." *Current Fin. Servs., Inc.*, 798 F. Supp. at 808 (citations and quotations omitted); *see also*

*Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995) ("[T]he alleged contemnor's

burden is to establish his inability [to comply] clearly, plainly, and unmistakably.").

According to Defendants, "[t]heir past failure to pay their taxes was based on their

inability to earn sufficient monies to pay staff, overhead, and taxes" without going out of

business. Defs.' Mem. in Opp'n, ECF No. 44, at 2. They similarly explain that these taxes went

unpaid because they "wanted to keep [LFHI] operating, [and] keep people employed, rather than

unemployed." *Id.* Although LFHI's financial hardship may be real, Defendants provide no

specific factual details or documentation to support their assertions. Such threadbare and

conclusory statements of financial distress, without supporting records or documentation, are

insufficient to allow the Court to evaluate fully Defendants' potential justification. *See*, *e.g.*,

*Huber*, 51 F.3d at 10-11 (finding that a party's conclusory statements of inability to pay, without

documentary support, are inadequate to carry the burden of establishing the justification); *SEC v.*

*Kenton Capital, Ltd.*, 983 F. Supp. 13, 15 (D.D.C. 1997) (finding that a party's "bald and

conclusory statements in his affidavit," without supporting documentation, are not sufficient

evidence of his inability to comply with the court's disgorgement order); *see also Bilzerian*, 112

F. Supp. 2d at 16 ("A mere claim of poverty … without adequate proof is not sufficient to satisfy

[a party's] burden."). As such, the Court finds that Defendants have not satisfied their burden of

demonstrating financial inability to comply.[4]

---

[4]     In their supplemental briefs, Defendants provide additional explanations for their
failure to comply, none of which the Court finds persuasive. *See Bilzerian*, 112 F. Supp. 2d at 16
(stating that a party's "intent is irrelevant" when determining civil contempt). For example,
Defendants state that they believe LFHI's building is worth "$1,000,000,000," but they have
been unable to finalize an agreement to sell this asset. Defs.' Suppl. Mem., Apr. 23, 2014, ECF
No. 46, at 1. But other than mentioning an unnamed potential buyer, Defendants do not describe
any other efforts to actively market the property. They also explain that $44,000 earmarked for

## 2. Good Faith Substantial Compliance

Defendants repeatedly maintain that they are attempting "in good faith" to comply and may be found in civil contempt only if they "intentionally, willfully, and wantonly" violate the Injunction. Defs.' Mem. in Opp'n, ECF No. 44, at 2. In their defense, they assert that the "intention to pay the taxes negat[es] any intentional or willful refusal to pay their taxes." *Id.* Defendants misunderstand what is required to justify noncompliance with a court order.

When evaluating a party's offered justification, "intent is irrelevant; the Court need not find that [the party's] failure to comply with the orders was willful or intentional." *Bilzerian*, 112 F. Supp. 2d at 16; *see also NLRB v. Blevins Popcorn Co.*, 659 F.2d 1173, 1183 (D.C. Cir. 1981) ("[T]he failure to comply with the court decree need not be intentional" for a civil contempt finding). Because the "absence of wil[l]fulness does not relieve [a party] from civil contempt," Defendants' argument to the contrary must fail. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949).

Although "good faith alone is not sufficient to excuse contempt," *Walker v. Ctr. for Food Safety*, 667 F. Supp. 2d 133, 137 (D.D.C. 2009) (citation omitted), a cognizable justification exists for good faith substantial compliance. *See Int'l Painters & Allied Trades Indus. Pension Fund*, 736 F. Supp. 2d at 40 (explaining that "good faith substantial compliance" can justify noncompliance with a court order). To meet this standard, "the contemnor must show that it

---

paying back taxes never made it to the IRS for unknown reasons, and another $100,000 was embezzled from LFHI, although the exact details of these events are not provided. *Id.* at 1-2. Defendants assert that these funds, if recovered, would go toward their unpaid taxes along with funds from a future sale of the building. *Id.* at 2. At this time, the Court finds that the offered circumstances do not satisfy Defendants' burden of justifying noncompliance. If, however, LFHI does bring itself into compliance in the future, it is entitled to seek reconsideration of any civil contempt sanction. *See SEC v. Showalter*, 227 F. Supp. 2d 110, 121 (D.D.C. 2002) ("'[S]anctions imposed in civil contempt proceedings … ordinarily are conditional, and a person or entity held in civil contempt may avoid the sanctions by promptly complying with the court's order.'") (quoting *Petties v. Dist. of Columbia*, 897 F. Supp. 626, 629-30 (D.D.C. 1995)).

'took all reasonable steps within [its] power to comply.'" *Id.* (quoting *Food Lion, Inc.*, 103 F.3d at 1017). As with the inability to financially comply justification, this substantial compliance justification "must be accompanied by adequate detailed proof." *Id.* at 38 (citation omitted).

Defendants attempt to justify their extensive noncompliance by arguing that LFHI's employment taxes are current for all of 2013 and the first quarter of 2014. Defs.' Mem. in Opp'n, ECF No. 44, at 4-26. Even if true, however, Defendants still fail to assert facts demonstrating satisfaction of their unpaid taxes from before 2013, including the outstanding balance from 2012.[5] Defendants also assert that they have "incorporated a new management system" and "employed an accountant to handle [their] taxes." Defs.' Mem. in Opp'n, No. 28, at 1. Although these positive steps may explain Defendants' ability to meet some of their most recent employment tax obligations, Defendants fail to demonstrate with sufficient detail what this new system is and how these procedures will prevent their noncompliance in the future. *See Int'l Painters & Allied Trades Indus. Pension Fund*, 736 F. Supp. 2d at 38 (requiring "adequate detailed proof" of good faith substantial compliance). Without more facts, the Court simply cannot conclude that Defendants have taken "all reasonable steps within [their] power to comply." *Id.* at 40 (citation and quotation omitted).

Further, Defendants do not contest the Government's allegations regarding several other violations of the Injunction, including: Defendants' failure to file with the IRS and the United States Social Security Administration, and issue to any employee, accurate IRS Form W-2; Defendants' obligation not to pay other creditors and transferring, disbursing or assigning money, property or assets until the required federal tax deposits are fully made for the given tax

---

[5] As is discussed above, the Government rejects Defendants' claim of being current on their 2013 and 2014 taxes. Rather, the Government provides evidence that LFHI still "owes taxes for every quarter since February of 2012." Pl.'s Reply, ECF No. 47, at 1.

period from the date of the [Injunction]; and Defendants' obligation not to pay other creditors unless LFHI is current on its federal employment tax obligations. Pl.'s Mot. for Civ. Contempt, ECF No. 25-1, at 6. Instead, Defendants implicitly acknowledge a violation of the latter two requirements when they assert that after the Injunction, LFHI's money was spent on overhead and staff salaries before paying all outstanding taxes. Defs.' Mem. in Opp'n, ECF No. 44, at 2. This blatant disregard of the Injunction suggests a willful violation, not good faith compliance. In addition, the Government points out that Defendants still have failed to file "LFHI's Form 940 federal unemployment tax return for the years 2009 and 2010." Pl.'s Suppl. Mem., ECF No. 41, at 3. Defendants make no attempt to dispute these claims, despite having the burden of proof, and their failure to satisfy these court-ordered obligations further demonstrates an overall inability to comply with the Injunction.

Although Defendants maintain that they are "aggressively working to find monies to pay [their] past due taxes,"[6] Defs.' Suppl. Mem., ECF No. 46, at 2, their good faith alone does not absolve them of the fact that they remain in substantial violation of the Injunction. *See Walker*, 667 F. Supp. 2d at 137 ("Although it may be a factor in determining whether a party has substantially complied, good faith alone is not sufficient to excuse contempt."). In the end, Defendants' conclusory and barebones assertions are insufficient to satisfy their burden of showing that they "took all reasonable steps within [their] power to comply." *Int'l Painters & Allied Trades Indus. Pension Fund*, 736 F. Supp. 2d at 40 (citation omitted).

*       *       *

Accordingly, for the reasons discussed above, the Court concludes that Defendants have not justified their noncompliance with the Injunction.

---

[6]     As mentioned before, Defendants provide no information concerning any efforts to "aggressively" market the property for sale.

## D. Civil Contempt Sanctions

The Court next must determine which sanctions, if any, are appropriate for Defendants' civil contempt. "The sole purpose of civil contempt sanctions is to 'coerce compliance or compensate a complainant for losses sustained,' not to punish." *Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*, 750 F. Supp. 2d 31, 34 (D.D.C. 2010) (quoting *In re Fannie Mae Sec. Litig.*, 552 F.3d 814, 823 (D.C. Cir. 2009)). When determining the scope and severity of sanctions, "a court must 'exert only so much authority of the court as is required to assure compliance.'" *Int'l Painters & Allied Trades Indus. Pension Fund v. ZAK Architectural Metal & Glass LLC*, 736 F. Supp. 2d 35, 38 (D.D.C. 2010) (quoting *SEC v. Bankers Alliance Corp.*, 881 F. Supp. 673, 678 (D.D.C. 1995)). Within this framework, "[c]ourts have wide discretion in fashioning remedial sanctions for civil contempt." *SEC. v. Levine*, 671 F. Supp. 2d 14, 36 (D.D.C. 2009) (citation omitted).

The arsenal of sanctions available to a court for civil contempt includes compensatory and coercive fines, as well as imprisonment. *See Pigford v. Veneman*, 307 F. Supp. 2d 51, 55-57 (D.D.C. 2004) (discussing compensatory and coercive civil contempt fines); *Landmark Legal Found. v. EPA*, 272 F. Supp. 2d 70, 76 (D.D.C. 2003) (discussing incarceration for civil contempt). Here, the Government requests an alternative remedy for Defendants' contempt: the appointment of a limited receiver to ensure LFHI's compliance with the Injunction and the internal revenue laws.[7] Pl.'s Suppl. Mem., Feb. 12, 2014, ECF No. 41, at 4-5.

---

[7] The Government initially requested both coercive and compensatory fines as sanctions for Defendants' contempt, namely "the imposition of a daily fine of $100 or more against each defendant until all tax payments required under the Order are made" and the awarding of "attorney's fees incurred in preparation and litigation of [the] contempt proceeding." Pl.'s Mot. for Civ. Contempt, ECF No. 25-1, at 8-9. In a supplemental filing, the Government revised its request and sought a receiver instead of fines. The Government explained, "[A]lthough typically used as contempt sanctions, neither fines nor the threat of incarceration

1. The Court's Power To Appoint A Receiver

Federal courts have broad equitable powers to craft remedial sanctions for civil contempt. *Levin*e, 671 F. Supp. 2d at 36 ("The Supreme Court has repeatedly emphasized the broad equitable powers of the district courts to shape equitable remedies to the necessities of particular cases, especially where a federal agency seeks enforcement in the public interest." (citation omitted)). A court's goal is to fashion a remedy that will coerce the contemnor into compliance, compensate the complainant for losses due to the noncompliance, or both. *Id.* Along with the ability to impose coercive and compensatory fines, a federal court's equitable powers include the ability to appoint a receiver to enforce compliance with the law. *See United States v. Bartle*, 159 F. App'x 723, 725 (7th Cir. 2005) ("Appointment of a receiver is authorized by the inherent equitable power of a federal court." (citation omitted)); *Morgan v. McDonough*, 540 F.2d 527, 533 (1st Cir. 1976) ("[R]eceiverships are and have for years been a familiar equitable mechanism. They are commonly a vehicle for court supervision of distressed businesses, but have not been limited to that role." (internal citation omitted)); *see also Levine*, 671 F. Supp. 2d at 36 ("Receivers are appointed so that they may take charge of a company to enforce compliance with regulatory laws." (citation omitted)).

In addition, federal district courts are granted specific statutory authority under 26 U.S.C. § 7402(a) to enforce the internal revenue laws. Included among the tools courts possess is the power to issue an order appointing a receiver to oversee compliance with the tax laws. *See 26 U.S.C. § 7402(a) ("The district courts of the United States at the instance of the United States*

---

would seem likely to be effective in remedying the real harm being caused here…. Instead, the Court should appoint a receiver to operate LFHI since it is clear that the defendants cannot operate it in compliance with the internal revenue laws and this Court's order." Pl.'s Suppl. Mem., ECF No. 41, at 9-10 (internal citations omitted). The Court agrees that fines are not an effective remedy in this instance.

shall have such jurisdiction to make and issue in civil actions … orders appointing receivers … for the enforcement of the internal revenue laws.").  Section 7402(a) "was intended to provide the district courts with a full range of powerful tools to ensure the enforcement of both the spirit and the letter of the internal revenue laws," *United States v. Raymond*, 78 F. Supp. 2d 856, 877 (E.D. Wis. 1999) (citation omitted), and the statute "has been construed broadly, to allow courts the full panoply of remedies necessary to effectuate the enforcement of the federal tax laws." *United States v. Bartle*, No. IP01-0768-C-B/S, 2002 WL 75437, at *4 (S.D. Ind. Jan. 16, 2002) (citation omitted).  Accordingly, this Court has both the equitable and statutory power to appoint a receiver as the remedy for Defendants' civil contempt.

### 2.  Whether The Court Should Appoint A Receiver

The Court must determine whether appointing a limited receiver is an appropriate remedy for Defendants' civil contempt.  "Courts have wide discretion in fashioning remedial sanctions for civil contempt," *Levine*, 671 F. Supp. 2d at 36, but they must ensure that the chosen remedy "coerce[s] compliance or compensate[s] a complainant for losses," rather than punish the contemnor for noncompliance.  *Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*, 750 F. Supp. 2d 31, 34 (D.D.C. 2010) (quoting *In re Fannie Mae Sec. Litig.*, 552 F.3d 814, 823 (D.C. Cir. 2009)).

The Government argues that Defendants have demonstrated a pattern and practice of noncompliance with the internal revenue laws by filing returns late (if they file at all), failing to submit their tax deposits, and largely disregarding their employment tax obligations.  Pl.'s Suppl. Mem., ECF No. 41, at 5.  A receiver, the Government explains, will ensure that LFHI files and pays its taxes on time in the future.  *Id.*  A receiver also will ensure that LFHI pays its taxes prior to any other operating expenses if there are insufficient funds to cover both.  *Id.*  And if the

18

receiver uncovers that LFHI generates insufficient revenue to pay simultaneously its taxes and other expenses, the receiver has the ability to seek judicial authority to wind down LFHI's affairs in an orderly fashion. *Id*. Overall, the Government argues that a receiver will ensure that Defendants are brought into compliance with the federal tax laws and the Injunction, as well as safeguard that Defendants expeditiously repay their outstanding judgment of more than $1 million in unpaid taxes and penalties.[8]

This Court already exercised its power under § 7402(a) when it issued the Injunction against Defendants that forms the basis for the Government's civil contempt motion. Order, ECF No. 18, at 1. Although Defendants consented to the Injunction, they now object to the appointment of a receiver under the same statutory provision. Defendants, however, do not argue that the Court lacks authority to appoint a receiver. Instead, they contend that a receiver will cause LFHI to "quickly close its doors and … probably declare bankruptcy" because customers will take their business elsewhere once they "learn that the Government has taken over [LFHI's] business." Defs.' Mem. in Opp'n, ECF No. 44, at 1-2.

Defendants' argument is unpersuasive and misconstrues the role of a receiver. As the Government rightly explains, a receiver will "examine, report on, and oversee LFHI's finances, prevent LFHI from continuing to pyramid its employment taxes, and ensure [that] LFHI timely files Forms 940 and 941 with the IRS, as required by the Treasury Regulations and this Court's [Preliminary] Injunction Order." Pl.'s Suppl. Mem., ECF No. 41, at 7. Contrary to Defendants' suggestion, the Government will not become a "funeral director" through the appointment of a receiver. Defs.' Mem. in Opp'n, ECF No. 44, at 1. Rather, the Government only seeks a

---

[8]     This includes the receiver's ability to oversee the prompt payment toward taxes of any money recovered from the alleged embezzlement, as well as the potential future sale of LFHI's building. Defs.' Suppl. Mem., ECF No. 46, at 1-2.

remedial mechanism through which it will recover Defendants' years of unpaid taxes and guarantee compliance with the Injunction moving forward.

The Court appreciates that "[a]ppointing a receiver is an extraordinary remedy, but this is an extraordinary situation." *SEC v. Universal Express, Inc.*, No. 04 CIV. 2322, 2007 WL 2469452, at *12 (S.D.N.Y. Aug. 31, 2007). Here, Defendants have continued to flout numerous aspects of the internal revenue laws and the Injunction, and the Court is not persuaded that Defendants can remedy their historic noncompliance or repay their substantial outstanding tax judgment without close supervision and support.

Other federal courts have appointed receivers under similar circumstances. For example, in *SEC v. Universal Express, Inc.*, the United States District Court for the Southern District of New York appointed a receiver when the defendants continued to violate federal securities laws and court orders, and failed to demonstrate there was someone "responsible, willing, and able to manage" the company going forward. 2007 WL 2469452, at *11-12. Similarly, in *United States v. Bartle*, the Seventh Circuit Court of Appeals upheld the district court's appointment of a receiver when the defendant owed more than $1 million in delinquent taxes and the "district court [had] policed [the defendant's] shenanigans over several years, listened to his excuses, and ultimately determined that [he] was untrustworthy and intentionally avoiding the government's collection of its judgment." 159 F. App'x 723, 724-25 (7th Cir. 2005). Although the Court does not—and need not—comment on whether Defendants have intentionally avoided their tax liability in this instance, the record contains ample evidence of Defendants' continued inability to comply with their federal tax obligations and the Injunction. Defendants, moreover, have failed to demonstrate convincingly their ability to rectify these past errors on their own in the future.

*     *     *

For the reasons discussed above, the Court concludes that the appointment of a limited receiver is the appropriate remedial sanction for Defendants' civil contempt.

## IV. CONCLUSION

For the foregoing reasons, the Government's Motion for Civil Contempt and Sanctions is granted and a limited receiver shall be appointed over LFHI. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: May 8, 2014

RUDOLPH CONTRERAS
United States District Judge